The PEOPLE of the State of Colorado, Complainant,

v.

Sanford B. HERTZ, Respondent.

No. 81SA100.

Supreme Court of Colorado, en banc.

Jan. 11, 1982.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Cooper & Kelley, P. C., Paul D. Cooper, Denver, for respondent.

LOHR, Justice.

Sanford B. Hertz, you appear before this court for imposition of discipline based on violation of your duties as a lawyer. After a formal hearing, a hearings committee of the Supreme Court Grievance Committee found that you suggested to a principal witness in a grievance proceeding then pending against you in this court that he write a letter on your behalf to the chief justice of this court substantially recanting his testimony in that grievance proceeding. The hearings committee concluded that your conduct violated C.R.C.P. 241 B(2) (conduct that violates accepted rules or standards of legal ethics), DR 1–102(A)(5) (conduct prejudicial to the administration of justice), and constituted an attempt to vio-

late DR7–110(B) (causing another to communicate ex parte with a judge before whom an adversary proceeding is pending as to the merits of the cause).

The hearings committee recommended a public censure as the fitting discipline for your misconduct. The hearings panel disapproved that recommendation as inappropriately lenient and recommended that you be suspended from the practice of law for six months.[1] We conclude, however, that public censure is the appropriate discipline for this breach of your professional obligations and so reject the recommendation of the hearings panel and adopt that of the hearings committee.

We summarize the facts from the findings of fact, conclusions and recommendation of the hearings committee. Some of these facts were established by admissions in the pleadings, others by stipulation, and the remainder by clear and convincing evidence presented in proceedings before that committee.

Mr. Hertz, you were admitted to the bar of this court on October 4, 1955. On September 26, 1973, a judge of the Denver District Court appointed you as the receiver for Huskin & Company and Partners Growth Realty in a securities fraud case initiated by the Division of Securities, State of Colorado, against J. David Huskin, Huskin & Company, Partners Growth Realty and 29 Colorado limited partnerships. During the course of performance of your duties as a receiver, you and J. David Huskin conferred on numerous occasions and opposed each other in court several times. Substantial and continuing animosity and tension characterized your relationship with Mr. Huskin during this time.

In 1974 a grievance proceeding was initiated against you based on allegations of misconduct and conflicts of interest arising out of your activities as a receiver. A formal hearing took place on November 7 to

---

1. The hearings committee members were unanimous in their findings and conclusions, and the hearings panel unanimously approved them. However, both the hearings committee and the hearings panel were divided in their recommendations for discipline. Two members of the hearings committee supported the recommen-

dation of public censure; one member recommended private censure. Four members of the hearings panel supported the recommendation of a six month suspension, while two favored public censure, and one considered private censure to be the merited discipline. Two members of the hearings panel did not participate.

10, 1977, before a hearings committee of this court's grievance committee. J. David Huskin was a principal witness against you in that proceeding. The gravamen of the complaint was that you utilized your position as a court-appointed special prosecutor for securities fraud by threatening to present criminal charges against Huskin solely to obtain an advantage in the civil receivership proceeding. The hearings committee found that the charges were supported by clear and convincing evidence and filed a written report containing findings, conclusions and recommendations for discipline. The hearings panel approved the hearings committee's report and submitted the matter to this court for consideration and appropriate action.

On February 14, 1979, while the former grievance matter was pending before this court, you met with Mr. Huskin to discuss the termination of the receivership. This meeting was more cordial and relaxed than earlier meetings, and Huskin commented that at least in some areas he believed that you had done an exceptionally good job and had made remarkable efforts. Encouraged by these favorable remarks, you mentioned the pending grievance proceeding to Huskin and suggested that he write a letter to the chief justice of this court on your behalf.[2] Huskin did not promise to do so, nor did he refuse.

On February 23, 1979, you and Huskin met again to discuss winding up the receivership. The meeting was cordial but was devoted to business. Near the end of that meeting you again suggested that Huskin write a letter to this court on your behalf. You gave him a handwritten outline suggesting points that he might consider for inclusion in such a letter and suggested to him that he discuss with his lawyer the issue of complying with your request. The outline was formulated by you with little or no discussion with Huskin. It was received in evidence before the hearings committee

and included the following suggested points:

(3) alleged threats—in heat of pressure—dealt with me & attorneys fairly. & without intimidation—

(4) No real Complaint in retrospect.

Huskin took the outline but did not say whether he would write the letter. The statements suggested in parts (3) and (4) would have been contrary to and a substantial recantation of Huskin's testimony in the earlier grievance proceeding, would have gone directly to the merits of that proceeding, and would have contradicted the findings of the hearings committee which were then pending before this court for review.

You did not consult your own lawyer before making the suggestions to Huskin. After the February 23 meeting you never again discussed the letter with Huskin and put no pressure on him to prepare such a letter.

Huskin furnished the handwritten outline to his lawyer but did not advise him that you had suggested that Huskin consult him about it. Huskin's lawyer decided that the matter should be referred to this court. After discussing it with Huskin, the lawyer did advise this court, which in turn referred the matter to the grievance committee. That committee then initiated the proceedings which have led to this public censure.

The hearings committee concluded that parts (3) and (4) of the memorandum reflecting your request to Huskin cannot be characterized as merely statements in mitigation to be considered by the court in making the ultimate determination of the fair and just discipline to be imposed. Rather, as that committee concluded, if those statements had been made by Huskin they would have related to the essential merits of the case and, if accepted by this court, probably would have exonerated you or at least would have required that the

---

**2.** Uncontradicted evidence showed that it is not uncommon in criminal cases for persons to correspond with trial judges in an effort to convince the trial court to be lenient in sentencing convicted defendants. The evidence also showed that copies of these communications often are not disclosed to the prosecutor. We do not approve the failure to disclose such communications. *See generally,* III *ABA Standards for Criminal Justice Standard* 18–5.4 (2d ed. 1980).

matter be remanded to the grievance committee for further proceedings. The hearings committee further concluded that your request was that Huskin significantly change the story he had told in his testimony under oath before that committee. We agree that your request to Huskin must be viewed as an attempt to convince him, through an ex parte communication to this court, to recant sworn testimony in a matter pending before us. We also agree with the hearings committee's conclusions that such conduct violates accepted rules or standards of legal ethics contrary to C.R.C.P. 241B(2), is prejudicial to the administration of justice in contravention of DR1–102(A)(5), and constitutes an attempt to cause another to communicate with this court ex parte as to the merits of a pending adversary proceeding in violation of DR7–110(B).

The highly serious professional misconduct which formed the basis for the grievance proceedings pending before us at the time you requested Huskin to write a letter to this court resulted in a six-month suspension of your license to practice law. Your transgressions resulting in that discipline are detailed in *People ex rel. Gallagher v. Hertz*, Colo., 608 P.2d 335 (1979), and will not be elaborated upon here. That period of suspension has been completed and your license to practice law was reinstated on June 13, 1980.

The matter which is the subject of *People ex rel. Gallagher v. Hertz, supra,* and the present proceedings constitute the only professional misconduct marring your record as a lawyer of 26 years experience. The hearings committee heard significant uncontradicted evidence that you have an excellent reputation among other businessmen and that you have a reputation among lawyers for truth, integrity and competence. However, we view the ethical violation which brings you before us now with particular seriousness because it occurred during the course of grievance proceedings which

should have brought vividly to your attention the importance of a lawyer's obligations to his profession and to the public.

We have explained in other cases that the selection of discipline to be imposed must ultimately be made by this court, and we have outlined the factors to be considered and the purposes to be served by disciplinary sanctions. *E.g., People v. Berge*, Colo., 620 P.2d 23 (1980). We shall not repeat these considerations here. In light of the relevant criteria, including your own record, we conclude that a public censure is appropriate to the gravity of your misconduct.

Mr. Hertz, you are hereby publicly censured.[3] It is also ordered that you pay the costs of these proceedings in the amount of $1321.35 within 60 days from the date this opinion is issued.

---

**3.** We have considered the respondent's exceptions to the findings, conclusions and recommendation of the grievance committee. Most relate to the propriety of the hearing panel's recommendation of a more severe sanction than that proposed by the hearings committee. These exceptions are moot as the result of our decision to accept the more lenient recommendations of the hearings committee. We find the other exceptions are not well taken.